DAVIS v. BOUTON MOTOR CO.

(Supreme Court, Appellate Division, Second Department.   May 1, 1908.)

NEGLIGENCE—FIRES—USE OF GASOLINE.

> In an action for the burning of plaintiff's building by fire communicated from defendant's automobile, whether defendant's chauffeur was negligent in attempting to repair the gasoline tank at night by the light of an open flame lamp taken from the automobile, from which it was claimed the gasoline was ignited, *held* for the jury.

Jenks, J., dissenting.

Appeal from Trial Term, Nassau County.

Action by Julius A. Davis against the Bouton Motor Company. Judgment of dismissal, and plaintiff appeals.   Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR and MILLER, JJ.

Dickinson W. Richards, for appellant.

Walter C. Sheppard, for respondent.

HOOKER, J.   The sole question which this record presents is whether there is any evidence of negligence on the part of the defendant's chauffeur who was in charge of its automobile.   The learned trial court dismissed the complaint at the close of the plaintiff's evidence, and appeal was brought to this court.   The action was for damages to buildings which were burned, being set, as the plaintiff claims, by the burning of defendant's automobile.

The plaintiff's witness, Krug, conducted a hotel in one of the towns of Nassau county.   About half past 10 o'clock on the evening of July 2, 1905, the automobile was driven up to his place, and one of the persons who were riding in it bought gasoline of the witness.   There was at this time a leaky gasoline tank in the vehicle.   After the gasoline was supplied, the automobile was started, and in half an hour or so returned; the chauffeur stating that he could not go any further because of the gasoline leaking.   The passengers in the automobile went forward on their journey by means of a livery, and the chauffeur remained to fix the car.   He took the lamp off the front of the car, and Krug testified that he "seemed to go back to the tank, which was midway in between the front and rear wheels, and was fixing the car there.   In fact, he asked me for a lantern, and I didn't think I had one there, and in the meantime he took off his own lamp."   The chauffeur telephoned from the witness' hotel, and was then advised by him that he might store the machine in his garage.   The chauffeur said: "No; I will fix it and go down.   I have got to do it anyway."   There had been a damp drizzly rain all the evening.   The witness went into his hotel, and busied himself for a time with preliminaries to closing up for the night.   On his way upstairs his attention was arrested by the cry of fire, and it was discovered that the automobile, which meanwhile had been drawn under one of the sheds connected with the hotel, was on fire, and the chauffeur, badly burned, was standing by.   At that moment the shed was not on fire.   The witness essayed to push the machine from under the shed, but was warned away by the chauffeur,

who said it might explode: The chauffeur disappeared, and was not sworn as a witness. The shed and some adjoining buildings were burned. The next day the witness examined the remains of the automobile and testified that he saw a lamp there—"the remains of a front automobile lamp. It was about in the center of the machine between the wheel base, on the ground." I think the jury would have been justified in drawing the inference that the defendant's agent, the chauffeur, took the automobile into the shed, whether with or without the invitation of the hotel keeper matters little, that he was engaged in an effort to remedy a leaking tank, and from the facts that in the road, before the automobile was taken into the shed, the chauffeur had attempted to examine or fix the leak by the aid of the light from the automobile lamp, and that a front automobile lamp was found after the fire on the ground under the automobile at about the point where the chauffeur was attempting to fix the leak while the automobile was still in the road, the further inference that the chauffeur was attempting to repair this leak in the shed by the aid of light from the automobile lamp. These facts, established by the inferences, offered some evidence of negligence, and presented the question for the jury's consideration whether or not a reasonably prudent man under those or similar circumstances would have undertaken to repair the leak of so volatile and inflammable a substance as gasoline by the assistance of a flame lamp in a wooden shed, where the result of ignition of the gasoline would evidently be disastrous to the building.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur, except JENKS, J., who dissents.